UNITED STATES of America, Plaintiff–Appellant,

v.

Judith Ann HELTON, Defendant–Appellee.

No. 91–5805.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 1, 1991.

Decided Jan. 10, 1992.

As Amended Feb. 12, 1992.

Jefferson McClure Gray, Asst. U.S. Atty., argued (Richard D. Bennett, U.S. Atty., on brief), Baltimore, Md., for plaintiff-appellant.

Denise Benvenga, argued (Fred Warren Bennett, Federal Public Defender, on brief), Baltimore, Md., for defendant-appellee.

Before ERVIN, Chief Judge, HAMILTON, Circuit Judge, and WARD, Senior District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Judith Ann Helton pled guilty to one count of theft of government property in violation of 18 U.S.C. § 641. At sentencing, the district court ruled that the "abuse of position of trust" enhancement under Sentencing Guideline 3B1.3 did not apply. The government appeals that ruling. Because the district court's finding that Helton did not hold a position of trust was not clearly erroneous, we affirm.

### I.

Helton began working at the Office of Procurement of the National Institute of Standards and Technology in September 1987, at the age of 23. In June 1988, she became an imprest fund cashier. The imprest fund included $125,000 in traveler's checks and $55,000 in cash. Two other employees, an alternate cashier and a trainee, also worked with the imprest fund. One of Helton's duties was to give employees traveler's checks and cash for job related travel or purchases. Helton did not have any discretion in this task; she issued the cash or checks whenever an employee showed her travel or purchase orders. During Helton's employment as cashier, her supervisor never audited the traveler's check portion of the fund. Helton's supervisor received monthly inventories from the bank issuing the traveler's checks. However, the supervisor never examined these statements. Instead, he gave them to Helton for verification. The cash portion of the fund was audited each quarter. From December 1988 until November 1989, Helton embezzled $20,050 from the traveler's check portion of the fund. She signed and countersigned 224 traveler's checks, using them for personal expenses. Investigators in the Department of Commerce and the Office of the Inspector General discovered Helton's embezzlement in June 1990.

On November 1, 1990, a grand jury returned a one count indictment charging Helton with theft of government property. On January 29, 1991, pursuant to a plea agreement, Helton pled guilty. The plea agreement provided for a base offense level of 10 with a two point upward adjustment for more than minimal planning and a two point downward adjustment for acceptance of responsibility. The parties disagreed over whether "abuse of position of trust" should apply. The presentence investigation report recommended not applying the enhancement. At sentencing, the district court ruled that "abuse of position of trust" did not apply, sentenced Helton to five years' probation with a period of home detention for six months, and imposed restitution in the amount of $20,050. If the district court had applied the two level enhancement for "abuse of position of trust," Helton would have faced a minimum prison term of five months.

### II.

This case involves section 3B1.3 of the Sentencing Guidelines, "Abuse of Position of Trust or Use of Special Skill," which reads:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facili-

tated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic. . . .

U.S.S.G. § 3B1.3. The Guidelines do not define "position of trust," but the commentary to section 3B1.3 provides some guidance on applying the enhancement:

The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller.

U.S.S.G. § 3B1.3, comment. (n. 1).

■ The parties first argue over the proper standard of review. The government urges this court to apply *de novo* review, while Helton claims that the clearly erroneous standard should apply. In a recent case construing the "special skill" aspect of section 3B1.3, this court held that the proper scope of review was the clearly erroneous standard. *United States v. Hummer*, 916 F.2d 186, 191 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991). The court reasoned that whether a defendant possessed a special skill is primarily a factual determination. *Id.* at 191. The decision of whether a person abused a position of trust, including whether that person held a position of trust in the first place, is also primarily a factual determination best left to the district court. We believe that both parts of section 3B1.3 should be reviewed under the same standard. In addition, we find persuasive the Fifth Circuit's holding that application of "abuse of position of trust" is "a sophisticated factual determination that will be affirmed unless clearly erroneous." *United States v. Ehrlich*, 902 F.2d 327, 330 (5th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 788, 112 L.Ed.2d 851 (1991). Therefore, we hold that the proper scope of review for section 3B1.3 "abuse of position of trust" enhancement is the clearly erroneous standard.

■ Next, we must apply the clearly erroneous standard to this case. In the district court below, the parties focused on the so-called "bank teller exception" in the commentary to section 3B1.3. Helton sought to analogize her position to that of "an ordinary bank teller," while the government argued that she held a "position of trust." The district court agreed with Helton, partly basing its ruling on an analysis of Helton's level of employment. Because Helton was a low-level employee, lower in the court's view of the evidence than a bank teller, the court reasoned that she could not have been in a position of trust. J.A. at 77. The government argues that the Guidelines do not confine "abuse of position of trust" to high-level managers, citing caselaw from other jurisdictions. However, we are not required to address that question here.

Regardless of whether Helton's status was lower on the totem pole than a bank teller's, the record shows that her employment was functionally equivalent to that of "an ordinary bank teller." The government seeks to distinguish Helton from a bank teller by applying a Ninth Circuit analysis of "position of trust":

[T]he primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong. If a person is in a relationship such that any attempt by a defendant to abuse the relationship could be simply or readily noticed by the second party to the relationship, presumably the two persons have not formed a "trust" relationship.

*United States v. Hill*, 915 F.2d 502, 505 (9th Cir.1990). The government argues that Helton's embezzlement could not be "readily noticed" because her supervisor trusted her and did not audit the traveler's check fund. However, Helton's argument that her embezzlement was not a "difficult-to-detect wrong" is more persuasive. Helton signed all 224 traveler's checks in her own name, and her misuse of the traveler's checks lasted for nearly a year. Helton's superiors would have quickly detected the

embezzlement had they not been, as the district court found, "inept," J.A. at 58, "sloppy," and "derelict in their duty." J.A. at 72. Under the government's reasoning, any cashier not subject to effective auditing would hold a "position of trust." Helton obviously should have been closely supervised, but being subject to lax supervision alone does not convert one's job into a "position of trust" under section 3B1.3.

Moreover, the "bank teller exception" is intended to illustrate the previous sentence in the commentary to section 3B1.3, which states that "[t]he position of trust must ... not merely have provided an opportunity that could as easily have been afforded to other persons." U.S.S.G. § 3B1.3, comment. (n. 1). Before discussing Helton's level of employment, the district court found that the embezzled "funds could just as easily have been picked off by another person." J.A. at 76. The record supports that finding, which itself precludes the "abuse of position of trust" enhancement. Therefore, because Helton's opportunity was "afforded to other persons," Helton's position was similar to an ordinary bank teller's, and Helton's offense was embezzlement, the district court's decision not to apply the "abuse of position of trust" enhancement was not clearly erroneous. U.S.S.G. § 3B1.3, comment. (n. 1). Accordingly, the judgment of the district court is hereby

AFFIRMED.