**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 94-5842

LARRY RICKY YOUNG,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                          No. 94-5892

LARRY RICKY YOUNG,
Defendant-Appellee.

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CR-93-263-MU)

Submitted: April 30, 1996

Decided: June 14, 1996

Before MURNAGHAN and WILKINS, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

Charles L. Morgan, Jr., Charlotte, North Carolina, for Appellant. Mark T. Calloway, United States Attorney, Robert J. Conrad, Jr., Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Larry Ricky Young appeals the 108-month sentence he received after he was convicted of conspiracy to rob an armored vehicle, 18 U.S.C.A. § 371 (West 1966 & Supp. 1996); obstruction or delay of commerce by robbery, 18 U.S.C.A. § 1951 (West 1984 & Supp. 1996), 18 U.S.C. § 2 (1988); bank robbery and bank larceny, 18 U.S.C.A. § 2113(a), (b) (West Supp. 1996), 18 U.S.C. § 2; and interstate transportation of stolen money, 18 U.S.C.A.§ 2314 (West Supp. 1996), 18 U.S.C. § 2. He contests the district court's enhancement of his sentence for obstruction of justice, for having a leadership role in the offense, and for abusing a position of trust. United States Sentencing Commission, Guidelines Manual, #8E8E # 3C1.1, 3B1.1(c), 3B1.3 (Nov. 1993). The government appeals the district court's decision not to enhance Young's sentence for use of a dangerous weapon. USSG § 2B3.1(b)(2)(E). We affirm in part, but vacate the obstruction of justice adjustment and remand for resentencing.

Young worked as the driver of a Wells Fargo armored van and made daily deliveries of cash to First Union National Bank automatic teller machines in Charlotte, North Carolina. He and a friend, Christopher Matthews, devised a scheme to steal money from the van. While Young put fuel in the van at a gas station, Matthews shocked him from behind with a stun gun, took his keys, and drove the van to a

2

nearby hiding place. Young had previously placed most of the cash to be delivered that day in a plastic bag which was on the floor in the cargo area of the van rather than in the safe. Young had also deactivated the alarm system in the van.

Matthews and a friend, Calvin Prince, flew to Baltimore where Matthews checked them into a hotel using Young's name and college identification card. Matthews attempted to give Young's half of the money to Young's former girlfriend for safekeeping, as he had been instructed to do, but she refused to take it. Matthews, Young, and Prince were arrested within a few days. Matthews and Prince entered guilty pleas to bank larceny. Matthews testified at Young's trial that Young had come up with the idea of using a stun gun and had given him money to buy the gun.

Young first contends that the district court failed to find that he committed perjury in his trial testimony and thus did not comply with the requirement of United States v. Dunnigan, 507 U.S. 87, 95 (1993), that the court make an independent finding that the defendant committed perjury before making an adjustment on that basis. We agree that a remand is necessary for the district court to make the necessary findings.

The district court accepted the probation officer's recommendation for an adjustment based on Young's false testimony that he was not involved in the robbery. However, the court did not find that Young had, in fact, testified untruthfully. The court did not make any finding concerning whether the adjustment could be made based on the alternative ground that Young gave false information to investigating agents before his arrest. The district court's failure to make an independent finding that Young committed perjury rather than testified falsely as a result of confusion, mistake, or a faulty memory requires a remand for compliance with Dunnigan. See United States v. Smith, 62 F.3d 641, 647 (4th Cir. 1995).

Young next maintains that the district court's finding concerning his leadership role in the offense was insufficient. The probation officer recommended a 2-level enhancement because Young made the critical decisions concerning the nature and timing of the robbery, suggested the use of the stun gun, gave Matthews money to buy a stun

3

gun, and told Matthews where to find the money in the van. Young offered no argument on this issue in the district court, only a denial that he was a leader. The district court's brief finding is adequate to support the adjustment because the basis for the adjustment was clear.

A 2-level adjustment is appropriate if the defendant has "abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." USSG § 3B1.3. A position of trust is one "characterized by professional or managerial discretion." The adjustment does not apply in the case of theft or embezzlement by an ordinary bank teller. USSG § 3C1.3, comment. (n.1). The district court's determination that the defendant abused a position of trust is reviewed under the clearly erroneous standard. United States v. Helton, 953 F.2d 867, 869 (4th Cir. 1992).

The district court found that Young's position was functionally equivalent to that of a bank teller, but was nonetheless a position of trust because he was trusted with such large sums of money. Young argues that the adjustment did not apply because his position was, like a bank teller's, lacking in professional or managerial discretion.

In United States v. Gordon, 61 F.3d 263, 269 (4th Cir. 1995), this court distinguished the position of an ordinary bank teller who has "little trust to abuse" because she is closely supervised, from that of a head teller who has access to highly sensitive bank security information which she may pass on to outsiders to facilitate a robbery. Gordon held that the enhancement is approached from the perspective of the victim, and does not turn on formalistic job descriptions, but depends on whether the employee has special duties or access to special information, the degree of supervision the employee works under, and whether the employee's actions render him more culpable than others who hold similar positions. Id. (citations omitted).

Unlike a bank teller who handles the bank's money only in the bank under close supervision, Young routinely had close to half a million dollars in his sole custody under no supervision at all. He knew how to deactivate the alarm system in the armored van to allow an outsider to enter, and he did so. Under the analysis used in Gordon, the district court did not clearly err in finding that Young occupied and abused a position of trust.

4

Finally, the government appeals the district court's decision not to give Young a 3-level increase because a dangerous weapon was brandished, displayed, or possessed during the offense. The government argues that a stun gun is by definition a dangerous weapon and that the issue should be reviewed de novo. Young maintains that the district court made a factual determination that, as used in this case, the stun gun was not a dangerous weapon, and that the court's finding should be reviewed for clear error. In this case, Young's position is the better one.

A "dangerous weapon" is defined in the guidelines as an instrument capable of inflicting death or a serious bodily injury. USSG § 1B1.1, comment. (n.1(d)). A "serious bodily injury" is defined as an injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty, or requiring medical intervention. USSG § 1B1.1, comment. (n.1(j)). The stun gun rendered Young unconscious for a short time and afterward he complained of nausea and of pain in his lower back, where two welts were visible. However, there appears to have been no significant injury. Young was briefly examined by medics, but, at the same time, he answered a police officer's questions, then went to the spot where police had discovered the abandoned Wells Fargo van and gave a written statement. He was interviewed by the FBI on the two following days.

The government argues that because the term "dangerous weapon" has been broadly construed by this Court and other circuit courts to include various innocuous objects used as weapons and unloaded or inoperable firearms used to threaten others, a stun gun should also come within the definition of a dangerous weapon. The government points out that the commentary to USSG § 2B3.1 directs that an object which appears to be a dangerous weapon should be treated as such. USSG § 2B3.1, comment.(n.2).

However, in this case the stun gun was not used to intimidate or harm anyone other than Young, and then only to create the appearance of a real robbery. Although a stun gun used to incapacitate or threaten victims or bystanders would qualify for the enhancement, we find that, in the particular circumstances of this case, the district court made a factual decision which was not clearly erroneous. The two cases principally relied on by the government are distinguishable. In

5

United States v. Agron, 921 F.2d 25, 26 (2d Cir. 1990), the defendant possessed a stun gun during a drug conspiracy and the Second Circuit found that it qualified as a dangerous weapon under USSG § 2D1.1(b)(1). The potential for violence in connection with drug dealing is well-established; therefore, a weapon capable of producing even temporary impairment necessarily is a dangerous weapon in that context. This Court's decision in United States v. Sturgis, 48 F.3d 784, 787-89 (4th Cir.), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3242 (U.S. Oct. 2, 1995) (No. 94-9367), deals with a conviction for assault with a dangerous weapon under 18 U.S.C. § 113(c) (1988), (current version at 18 U.S.C.A. § 133(a)(3) (West Supp. 1995)), rather than with an enhancement under the sentencing guidelines. However, Sturgis is instructive because it holds that the question of "whether a particular object was used as a dangerous weapon is not so mechanical that it can be reduced to a question of law." 48 F.3d at 788. Rather, it involves "a functional inquiry into the use of the instrument rather than a metaphysical reflection on its nature." Id. To the extent that it is relevant in a guideline case, Sturgis supports the district court's decision.

We therefore affirm Young's sentence with the exception of the obstruction of justice adjustment. The sentence is vacated and remanded for reconsideration of that issue. On remand, the district court should make an independent finding that Young committed perjury, or that the adjustment is warranted on other grounds, or resentence him without it. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

6